# EXHIBIT "P-2"

# BAY ROCK UMBRELLA POLICY

# COMMERCIAL LINES POLICY



# Mid-Continent Group®

MID-CONTINENT CASUALTY COMPANY      MID-CONTINENT INSURANCE      OKLAHOMA SURETY
P.O. BOX 1409   TULSA, OKLAHOMA   74101-1409   918-587-7221   1-800-722-4994   FAX: 918-588-1295

BJP 190-0 (ED. 5-96) SPECIAL

# MID-CONTINENT CASUALTY COMPANY
### P. O. Box 1409    Tulsa, Oklahoma  74101

## COMMERCIAL EXCESS POLICY
## DECLARATIONS

JUL 0 8 2003

**CERTIFIED COPY**

| |
|---|
| POLICY NO: XS 125125 |
| RENEWAL NO: XS 119540 |

**Named Insured and Mailing Address**
BAY ROCK OPERATING COMPANY
JOHN MACDIARMID
A.N. MACDIARMID
PO BOX 12468
SAN ANTONIO, TX  78212-0468

**Agent Name and Mailing Address**
EICHLITZ DENNIS WRAY WESTHEIMER
42-210

POLICY PERIOD: FROM __6/30/03__  TO __6/30/04__   at 12:01 A.M. Standard Time at your mailing address shown above

THE NAMED INSURED IS    **CORPORATION**

BUSINESS DESCRIPTION:  **OIL LEASE OPERATOR**

IN RETURN FOR THE PAYMENT OF THE PREMIUM AND SUBJECT TO ALL TERMS OF THE POLICY, **WE** AGREE WITH **YOU** TO PROVIDE THE INSURANCE COVERAGE STATED IN THIS POLICY.

LIMIT OF INSURANCE:

| | |
|---|---|
| POLICY AGGREGATE LIMIT | $3,000,000 |
| SELF-INSURED RETENTION (EACH **OCCURRENCE OF OFFENSE** NOT COVERED BY **UNDERLYING INSURANCE**) | $10,000 |
| ADVANCE PREMIUM | $9,420 |
| PREMIUM ADJUSTABLE AT RATE OF | $N/A |
| SUBJECT TO MINIMUM PREMIUM OF | $9,420 |

FORM(S) AND ENDORSEMENT(S) MADE PART OF THIS POLICY AT INCEPTION
MU6001(1-03), MU6002(9-00), MU6008(1-98), MU6013(1-98), MU6015(1-98),MU6020(1-98)
MU6021(1-98),  MU6054(12-02), MU6057(1-98), MU6073(4-98), MU6076(4-97), MU6140(4-01)
MU6102(4-98), MU6103(4-98), MU6150(6-02), MI9002(6-00), MI9014(3-98), MI9046(5-01)

Countersigned at:   __SAN ANTONIO, TX__
Date:        __TLT / 6/26/2003__
                                    By _____
                                        Authorized Representative
                HOME OFFICE

These Declarations together with the Policy Conditions Coverage Part, Coverage Form(s) and form(s) and endorsement(s), if any issued to Form A Part thereof, complete the above Numbered Policy.

MU 60 00 (01 98)

## DECLARATIONS (Continued)
## SCHEDULE OF UNDERLYING INSURANCE

| TYPE OF INSURANCE INSURER POLICY NO. | APPLICABLE LIMITS | | POLICY PERIOD |
|---|---|---|---|
| **(A)** Automobile Liability | | | From: 6/30/03 |
| | Bodily Injury and Property Damage Combined Single Limit | | To: 6/30/04 |
| OKLAHOMA SURETY CO 06TX28518 | | | |
| | $1,000,000 | Each Occurrence | |
| **(B)** Garage Liability | | | From: |
| | Limits of Liability | | To: |
| EXCLUDED | | | |
| | $ | Each Accident Auto | |
| | $ | Each Accident Other Than Auto | |
| | $ | Aggregate Other Than Auto | |
| **(C)** General Liability | | | From: 6/30/03 |
| | Bodily Injury and Property Damage | | To: 6/30/04 |
| MID-CONTINENT CASUALTY CO. 04GL119051 | Combined Single Limit | | |
| | $1,000,000 | Each Occurrence | |
| | $2,000,000 | General Aggregate | |
| | $2,000,000 | Products/Completed Operation Aggregate | |
| | $1,000,000 | Personal and Advertising Injury | |
| **(D)** Standard Worker's Compensation and Employer's Liability | | | From: 9/13/02 |
| | Coverage B-Employer's Liability Bodily Injury By Accident | | To: 9/13/03 |
| TX MUTUAL INS CO SBF0001047956 | | | |
| | $500,000 | Each Accident | |
| | Bodily Injury By Disease | | |
| | $500,000 | Policy Limit | |
| | Bodily Injury By Disease | | |
| | $500,000 | Each Employee | |

# COMMERCIAL UMBRELLA POLICY

PLEASE READ THIS POLICY CAREFULLY TO DETERMINE RIGHTS, DUTIES, COVERAGE AND COVERAGE RESTRICTIONS.   WE HAVE NO DUTY TO PROVIDE COVERAGE UNLESS THERE HAS BEEN FULL COMPLIANCE WITH ALL THE CONDITIONS - SECTION V - OF THIS POLICY.

The words **you** and **your** in this policy refer to the **Named Insured** shown in the Declarations and all other persons or organizations qualifying as **Named Insureds** under this policy.  The words **we, us** and **our** refer to the company providing the insurance.

The word **insured** means any person or organization qualifying as such under SECTION III - WHO IS AN INSURED.

All highlighted words and phrases have special meaning.  Refer to SECTION VI - DEFINITIONS.

## SECTION I - INSURING AGREEMENTS

In consideration of the payment of premium and in reliance upon representations **you** made to **us** during the process of obtaining this insurance and subject to the Limit of Insurance shown in item 3 of the Declarations, and all the exclusions, terms and conditions of this policy, **we** agree with **you** as follows:

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**

    a. We will indemnify the **insured** for **ultimate net loss** in excess of the **retained limit** because of **bodily injury** or **property damage** to which this insurance applies.  **We** will have the right to associate with the **underlying insurer** and the **insured** to defend any **claim** or **suit** seeking damages for **bodily injury** or **property damage** to which this insurance applies. But:

        (1) The amount **we** will indemnify for **ultimate net loss** is limited as described in SECTION IV - LIMIT OF INSURANCE;

        (2) **We** have a right to defend any **claims** or **suits** to which this insurance applies but which are not covered by any **underlying insurance** shown in the Declarations; **we** also have the right to defend such **claims** or **suits** if the applicable limit of **underlying insurance** is exhausted;

        (3) At **our** discretion, **we** may investigate any **occurrence** and settle any **claim** or **suit** that **we** have a right to defend; and

        (4) **Our** right to defend any existing or future **suits** end when **we** have exhausted the applicable Limit of Insurance in indemnification of judgments or settlements under Coverage A and B.

    No other obligation or liability to indemnify or perform acts or services is covered unless explicitly provided for under SECTION II - DEFENSE.

    b. It is agreed that:

        (1) The **bodily injury** or **property damage** must occur during the policy period of this policy;

        (2) With respect to **your** liability (other than under a contract or agreement) for **bodily injury** to **your** employees arising out of an in the course of their employment by **you**:

            (a) **Bodily injury** by disease must be caused or aggravated by the conditions of the employment; and

            (b) An employee's last day of last exposure to conditions causing or aggravating such a disease must occur during the policy period of this policy.

        (3) Damages because of **bodily injury** include damages sought by any person or organization for care or loss of services resulting at any time from the **bodily injury**;

        (4) The **bodily injury** or **property damage** must be caused by an **occurrence**; and

        (5) The **occurrence** must take place in the **coverage territory**.

2. **Exclusions**

    This insurance does not apply to:

    a. **Bodily injury** or **property damage** either expected or intended from the standpoint of the **insured**. This exclusion does not apply to **bodily injury** resulting from the use of reasonable force to protect persons or property.

    b. **Bodily injury** or **property damage** for which the **insured** is obligated to pay damages by reason of the assumption or liability in a contract or agreement.  This exclusion does not apply to liability for damages:

MU 60 01 (01 03)                                                                                                                    Page 1 of 15

      (1) Assumed in contract or agreement that is an **insured contract** provided the **bodily injury** or **property damage** occurs subsequent to the execution of the contract or agreement; or

      (2) That the **insured** would have in the absence of the contract or agreement.

  c. Liability imposed on the **insured** or **insured's** insurer, under any of the following laws:

      (1) Employees' Retirement Income Security Act of 1974 (E.R.I.S.A) as now or hereafter amended;

      (2) Any uninsured motorists, underinsured motorist, or automobile no-fault or first party **bodily injury** or **property damage** law; or

      (3) Any workers' compensation, unemployment compensation or disability benefits law or any similar law.

  d. Punitive or exemplary damages because of **bodily injury** to any employee of the **insured** when such employee is:

      (1) Injured within the scope of employment; and

      (2) Employed in violation of law.

  e. **Bodily injury** to an employee of **yours** while employed by **you** in violation of law with **your** actual knowledge or the actual knowledge of any of **your** executive officers.

  f. **Bodily injury** arising out of any:

      (1) Refusal to employ;

      (2) Termination of employment;

      (3) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or

      (4) Consequential **bodily injury** as a result of (1) through (3) above.

  This exclusion applies whether the **insured** may be held liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of such **bodily injury**.

  g. (1) **bodily injury** or **property damage** arising out of the actual, alleged or threatened discharge, seepage, migration, dispersal, release or escape of **pollutants**:

      (a) That are or that are contained in any property that is:

         (i) Being moved from the place where such property or **pollutants** are accepted by the **insured** for movement into or onto an **auto**;

         (ii) Being transported or towed by an **auto**;

         (iii) Otherwise in the course of transit by anyone;

         (iv) Being stored, disposed of, treated or processed in or upon an **auto**; or

         (v) Being moved from an **auto** to the place where such property or **pollutants** are finally delivered, disposed of or abandoned by the **insured**.

      (b) At or from any premises, site or location which is or was at any time, owned or occupied by, or rented or loaned to, any **insured**;

      (c) At or from any premises, site or location which is or was at any time used by or for any **insured** or others for the handling, storage, disposal, processing or treatment of **waste**;

      (d) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as **waste** by or for any **insured** or any person or organization for whom any **insured** may be legally responsible; or

      (e) At or from any premises, site or location on which any **insured** or any contractors or subcontractors working directly or indirectly on any **insured's** behalf are performing operations:

         (i) If the **pollutants** are brought on or to the premises, site or location in connection with such operations by such **insured**, contractor or subcontractor; or

         (j) If the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize or in any way respond to, or assess the effects of **pollutants**.

    (2) Any loss, cost or expense arising out of any:

      (a) Request, demand or order that any **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of **pollutants**; or

**(b)** Claim or suit by or on behalf of any governmental authority or others for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of **pollutants.**

**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. **Waste** includes materials to be recycled, reconditioned or reclaimed.

Paragraphs **(1)(a)(iv)** and **(1)(b)** through **(1)(e)** do not apply to fuels, lubricants, fluids, exhaust gases or other similar **pollutants** that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered auto or its parts, if the **pollutants** escape or are discharged, dispersed or released directly from an **auto** part designed by its manufacturer to hold, receive, store, or dispose of such **pollutants.**

Paragraphs **(1)(b)** through **(1)(e)** do not apply to pollutants not in or upon an **auto** if:

**(1)** The **pollutants** or any property in which the **pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of an **auto;**

**(2)** The discharge, dispersal, release or escape of the **pollutants** is caused directly by such upset, overturn or damage; and

**(3)** The **bodily injury** or **property damage** is not otherwise excluded under paragraph **(1)(a)** of this exclusion.

Paragraphs **(1)(b)** and **(1)(e)(i)** of this exclusion do not apply to **bodily injury** or **property damage** arising out of heat, smoke or fumes from a **hostile fire.** As used herein, a **hostile fire** means one which becomes uncontrollable or breaks out from where it was intended to be.

**h.** **Bodily injury** or **property damage** arising out of the ownership, maintenance, use or entrustment to others of any aircraft or watercraft owned or operated by or rented or loaned to any **insured.** Use includes operation and **loading or unloading.**

This exclusion does not apply to:

**(1)** Watercraft while ashore on premises **you** own or rent;

**(2)** Watercraft **you** do not own that are:

  **(a)** Less than 26 feet long; and

  **(b)** Not being used to carry persons or property for a charge.

**(3)** Liability assumed under any **insured contract** for the ownership, maintenance or use of aircraft or watercraft.

**i.** **Bodily injury** or **property damage** arising out of the use of any **mobile equipment** in, or while practicing or being prepared for a prearranged racing, speed or demolition contest or in any stunting activity.

**j.** Liability assumed under any **insured contract** for **bodily injury** or **property damage** due to war, whether or not declared, or any act or condition incident to war. War includes civil war, insurrection, rebellion, revolution, or acts of terrorism.

**k.** Property damage to:

**(1)** Property **you** own;

**(2)** Premises **you** sell, give away or abandon, if the **property damage** arises out of any part of those premises;

**(3)** That particular part of real property on which **you** or any contractor or subcontractor working directly or indirectly on **your** behalf is performing operations, if the **property damage** arises out of those operations; or

**(4)** That particular part of any property that must be restored, repaired or replaced because **your work** was incorrectly performed on it.

Paragraph **(2)** of this exclusion does not apply if the premises are **your work** and were never occupied, rented or held for rental by **you.**

Paragraphs **(3)** and **(4)** of this exclusion do not apply to liability assumed under a railroad sidetrack agreement.

Paragraph **(4)** of this exclusion does not apply to **property damage** included in the **products-completed operations hazard.**

**l.** **Property damage** to **your product** arising out of it or any part of it.

m. **Property damage to your work** arising out of it or any part of it and included in the **products-completed operations hazard**.

This exclusion does not apply if the damage work or the work out of which the damage arises was performed on **your** behalf by a subcontractor.

n. **Property damage to impaired property** or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in **your product** or **your work**; or

(2) A delay or failure by **you** or anyone acting on **your** behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to **your product** or **your work** after it has been put to its intended use.

o. Damages claimed for any loss, cost or expense incurred by **you** or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) **Your product**;

(2) **Your work**; or

(3) **Impaired property**.

If such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

p. **Bodily injury** or **property damage**:

(1) With respect to which an **insured** under this policy is also an **insured** under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an **insured** under any such policy but for its termination upon exhaustion of its limit of liability;

(2) Resulting from the **hazardous properties** of **nuclear material** and with respect to which:

(a) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

(b) The **insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization; or

(3) Resulting from the **hazardous properties** of **nuclear material**, if:

(a) The **nuclear material**:

(i) Is at any **nuclear facility** owned by, or operated by or on behalf of, an **insured**; or

(ii) Has been discharged or dispersed therefrom.

(b) The **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an **insured**; or

(c) The **bodily injury** or **property damage** arises out of the furnishing by an **insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this subparagraph (3) applies only to **property damage** to such **nuclear facility** any property thereat.

As used in this exclusion:

(1) **Hazardous properties** include radioactive, toxic or explosive properties;

(2) **Nuclear material** means **source material**, **special nuclear material** or **by-product material**;

(3) **Source material**, **special nuclear material**, and **by-product material** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

(4) **Spent fuel** means any fuel element of fuel component, solid or liquid, which has been used or exposed to radiation in a **nuclear reactor**;

(5) **Waste** means any waste material:

(a) Containing **by-product material** other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **source material** content; and

(b) Resulting from the operation by any person or organization of any **nuclear facility** included under the first two paragraphs of the definition of **nuclear facility**.

**(6) Nuclear facility** means:

(a) Any **nuclear reactor**;

(b) Any equipment or device designed or used for:

(i) Separating the isotopes of uranium or plutonium;

(ii) Processing or utilizing **spent fuel**; or

(iii) Handling, processing or packaging **waste**.

(c) Any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the **insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

(d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **waste**; and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

**(7) Nuclear reactor** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

**(8) Property damage** includes all forms of radioactive contamination of property.

With respect to **your** liability (other than under a contract or agreement) for **bodily injury** to **your** employees arising out of and in the course of their employment by **you**, exclusions **h.**, **i.** and **j.** do not apply.

## COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

**1. Insuring Agreement**

**a.** **We** will indemnify the **insured** for **ultimate net loss** in excess of the **retained limit** because of **personal injury** or **advertising injury** to which this insurance applies. No other obligation or liability to indemnify or perform acts or services is covered unless explicitly provided for under SECTION II - DEFENSE. **We** will have the right to associate with the **underlying insurer** and the **insured** to defend any **claim** or **suit** seeking damages for **personal injury** or **advertising injury** to which this insurance applies. But:

(1) The amount **we** indemnify for **ultimate net loss** is limited as described in SECTION IV - LIMIT OF INSURANCE;

(2) At **our** discretion, **we** may investigate any **offense** and settle any claim or **suit** that **we** have a right to defend;

(3) **We** have the right to defend any **claims** or **suits** to which this insurance applies but which are not covered by any **underlying insurance** shown in the Declarations; we also have the right to defend such **claims** or **suits** if the applicable limit of **underlying insurance** is exhausted; and

(4) **Our** right to defend any existing or future **suits** end when **we** have exhausted the applicable Limit of Insurance in indemnification of judgments or settlements under Coverages A and B.

**b.** This insurance applies to:

(1) **Personal injury** caused by an **offense** arising out of **your** business, excluding advertising, publishing, broadcasting or telecasting by or for **you**;

(2) **Advertising injury** caused by an **offense** committed in the course of advertising **your** goods, products or services;

**2. Exclusions**

This insurance does not apply to:

**a.** **Personal injury** or **advertising injury**:

(1) For which coverage is provided by **underlying insurance** written on a claims made basis, including any renewal or replacement of such policy;

(2) Arising out of oral or written publication of material, if done by or at the direction of the **insured** with knowledge of its falsity;

(3) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(4) Arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the **insured**; or

(5) For which the **insured** has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the **insured** would have in the absence of the contract or agreement.

b. **Advertising injury** arising out of:

(1) Breach of contract, other than misappropriation of advertising ideas under an implied contract;

(2) The failure of goods, products or services to conform with advertised quality or performance;

(3) The wrong description of the price of goods, products or services; or

(4) An **offense** committed by an **insured** whose business is advertising, broadcasting, publishing or telecasting.

c. **Personal injury** arising out of any:

(1) Refusal to employ;

(2) Termination of employment;

(3) Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or

(4) Consequential **personal injury** as a result of **(1)** through **(3)** above.

## SECTION II - DEFENSE

When we have the right to defend, **we** will indemnify the **insured** for:

1. Up to $250. for cost of bail bonds required because of accidents or traffic law violations related to an accident arising out of the use of any vehicle to which this policy applies. **We** do not have to furnish these bonds.

2. The cost of bonds to release attachments, but only for bond amounts within the applicable Limit of Insurance. **We** do no have to furnish these bonds.

3. All reasonable expenses incurred by the **insured** at **our** request to assist **us** in the investigation or defense of any **claim** or **suit**, including actual loss of earnings up to $250. a day because of time off from work.

4. All costs taxed against the **insured** in any **suit** we defend.

5. **Pre-judgment interest** awarded against the **insured** on that part of any judgment covered under this policy. If **we** offer the applicable Limit of Insurance in settlement of a **claim** or **suit**, we will not indemnify the **insured** for any **pre-judgment interest** imposed or earned after the date of such offer.

6. All interest earned on that part of any judgment within the Limit of Insurance after entry of the judgment and before **we** have indemnified the **insured**, offered to indemnify, or deposited in court that part of any judgment that is within the applicable Limit of Insurance.

Payments under this section of the policy, as well as payments for all expenses **we** incur, will not reduce the Limit of Insurance.

## SECTION III - WHO IS AN INSURED

1. If **you** are designated in the Declarations as:

a. An individual, **you** and **your** spouse are **insureds**, but only with respect to the conduct of a business of which **you** are the sole owner;

b. A partnership or joint venture, **you** are an **insured**. **Your** members, **your** partners, and their spouses are also **insureds**, but only with respect to the conduct of **your** business;

c. An organization other than a partnership or joint venture, **you** are an **insured**. **Your** executive officers and directors are **insureds**, but only with respect to their duties as **your** officers or directors. **Your** stockholders are also **insureds**, but only with respect to their liability as stockholders.

Except with respect to:

(1) any **auto**; or

(2) **mobile equipment** registered in **your** name under any motor vehicle registration law.

2. Each of the following is also an **insured**:

a. **Your** employees, other than **your** executive officers, but only for acts within the scope of their employment by **you**. However, no employee is an **insured** for:

    **(1)** **Bodily injury** or **personal injury** to **you** or to a co-employee while in the course of his or her employment, or the spouse, child, parent, brother or sister of that co-employee as a consequence of such **bodily injury** or **personal injury**, or for any obligation to share damages with or repay someone else who must pay damages because of the injury; or

    **(2)** **Bodily injury** or **personal injury** arising out of his or her providing or failing to provide professional health care services; or

    **(3)** **Property damage** to property owned or occupied by or rented or loaned to that employee, any of **your** other employees, or any of **your partners or members** (if **you** are a partnership or joint venture).

**b.** Any person (other than **your** employee) or any organization while acting as **your** real estate manager.

**c.** Any person or organization having proper temporary custody of **your** property if **you** die, but only:

    **(1)** With respect to liability arising out of the maintenance or use of that property; and

    **(2)** Until **your** legal representative has been appointed.

**d.** **Your** legal representative if **you** die, but only with respect to duties as such.  That representative will have all **your** rights and duties under this policy.

**e.** Any person or organization qualifying as an **insured** under any policy of **underlying insurance**. Coverage afforded such **insureds** under this policy applies only to injury or damage:

    **(1)** Which is covered by this policy; and

    **(2)** Which is covered by the **underlying insurance** or would be covered but for the exhaustion of such policy's limits of insurance.

This policy shall not afford such person or organization limits of insurance in excess of:

    **(1)** The minimum Limit of Insurance **you** agreed to provide; or

    **(2)** The Limit of Insurance under this policy

Whichever is less.

**f.** Any person or organization for whom **you** have agreed in writing prior to any **occurrence** or **offense** to provide insurance such as is afforded by this policy, but only with respect to operations performed by **you** or on **your** behalf, or facilities owned or used by **you**.  This policy shall not afford such person or organization limits of insurance in excess of:

    **(1)** The minimum Limit of Insurance **you** agreed to provide; or

    **(2)** The Limit of Insurance under this policy

Whichever is less.

**3.** With respect to:

**a.** Any **auto**; or

**b.** **Mobile equipment** registered in **your** name under any motor vehicle registration law;

Any person is an **insured** while driving such **auto** or **mobile equipment** with **your** permission.  Any other person or organization responsible for the conduct of such person is also an **insured**, but only with respect to liability arising out of the operation of the **auto** or registered **mobile equipment**.

However, except with respect to **your** partners, employees, or members of their households, the owner or anyone else from whom **you** hire or borrow an **auto** is an **insured** only if that **auto** is a trailer connected to an **auto you** own.

But no person or organization is an **insured** under this paragraph **3.** for:

**a.** **Bodily injury** to a co-employee of the person driving the **auto** or **mobile equipment**;

**b.** **Property damage** to property owned by the employer of any person who is an **insured** under this provision;

**c.** Any **auto you** hire or borrow from one of **your** partners, employees or members of their households, if they are the owner of such **auto**, unless:

    **(1)** Insurance is afforded for such **auto** by **underlying insurance**, or would be afforded under such **underlying insurance** but for exhaustion of such policy's limits of liability; or

    **(2)** Such **auto** is a trailer connected to an **auto you** own.

**d.** Any **auto** being used by a person employed in the business of selling, servicing, repairing or parking **autos** unless they are **your** employee; or

    e.  The movement of property to or from an **auto** except **you, your** employees of the lessees or borrowers of such **auto**, and any employees of the lessees or borrowers.

4.  Any organization **you** newly acquire or form, other than a partnership or joint venture, and over which **you** maintain ownership or majority interest, will qualify as an **insured** if there is no other similar insurance available to that organization.  However:

    a.  Coverage under this provision is afforded only until the 90th day after **you** acquire or form the organization or the end of the policy period set forth in Item 2 of the Declarations, whichever is earlier;

    b.  Coverage is applicable only in excess of the Schedule of **underlying insurance** as shown in the Declarations, and **you** must add such organization to **your underlying insurance** as soon as practicable, advising **us** of such additions. **We** may then make adjustment of premium charges as called for in SECTION V - CONDITIONS Item 9. Maintenance of Underlying Insurance;

    c.  Coverage A. does not apply to **bodily injury** or **property damage** that occurred before **you** acquired or formed the organization; and

    d.  Coverage B. does not apply to **personal injury** or **advertising injury** arising out of an **offense** committed before **you** acquired or formed the organization.

No person or organization is an **insured** with respect to the conduct of any current or past partnership or joint venture that is not shown as a **Named Insured** in the Declarations.

## SECTION IV - LIMIT OF INSURANCE

1.  The Policy Aggregate Limit shown in Item 3 of the Declarations and the rules below fix the most **we** will indemnify regardless of the number of:

    a.  **Insureds;**

    b.  **Claims** made or **suits** brought; or

    c.  Persons or organizations making **claims** or bringing **suits.**

2.  The Policy Aggregate Limit is the most **we** will indemnify for:

    a.  All **ultimate net loss** under Coverage A. and Coverage B. combined, except **ultimate net loss** because of injury or damage arising from the **automobile hazard**;

    b.  Each **occurrence** with regard to **ultimate net loss** because of injury or damage arising from **automobile hazard.**

3.  If the Policy Aggregate Limit is paid prior to this policy's termination date for losses other than losses arising from the **automobile hazard**, this policy's premium is fully earned.

4.  The Policy Aggregate Limit applies separately to each consecutive annual period, and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months.  In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limit of Insurance.

## SECTION V - CONDITIONS

1.  **Appeals**

In the event the **insured** or any **underlying insurer** elects not to appeal a judgment which exceeds the **retained limit**, **we** may elect to do so. **We** shall be liable, in addition to the Limit of Insurance, for all costs, taxes, expenses incurred and interest on judgments incidental to such an appeal and for all such costs, expenses and interest on appeals in connection with **our** right to defend the **insured** under SECTION II - DEFENSE.

2.  **Bankruptcy**

Bankruptcy, insolvency, or receivership of the **insured**, the **insured's** estate or of any **underlying insurer** will not relieve **us** of **our** obligations under this policy.  With regard to bankruptcy, insolvency, or receivership of any **underlying insurance**, this policy shall not apply as a replacement of such bankrupt or insolvent insurer and **our** Limits of Insurance will apply only in excess of the required Limit(s) of Insurance stated in The Schedule of Underlying Insurance of the Declarations of this policy.

3.  **Cancellation**

    a.  The first **Named Insured** shown in the Declarations may cancel this policy by delivering it to **us** or any of **our** authorized agents or by sending **us** written notice stating when the future cancellation will take effect.  Cancellation will become effective the date of delivery of the policy to **us** or upon such future date requested by the first **Named Insured**.

    b.  **We** may cancel this policy by mailing or delivering to the first **Named Insured** written notice of cancellation at least ten (10) days before the effective date of cancellation:

        (1)  If **we** cancel because of nonpayment of premium whether payable directly to **us** or payable to **our** agents or others under any installment payment plan, premium finance plan, extension or credit or other payment plan;

        (2)  If this policy has been in effect for 60 or fewer days, we may cancel for any reason; or

        (3)  If this policy has been in effect for more than 60 days, we may cancel only for one or more of the following reasons:

            (a)  Fraud in obtaining coverage;

            (b)  Failure to pay premiums when due;

            (c)  An increase in hazard within the control of the insured which would produce an increase in rate;

            (d)  Loss of our reinsurance covering all or part of the risk covered by the policy; or

            (e)  If we have been placed in supervision, conservatorship or receivership and the cancellation is approved or directed by the supervisor, conservator or receiver.

    c.  **We** will mail or deliver **our** notice to the **Named Insured's** last mailing address known to **us.**

    d.  Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

    e.  If this policy is cancelled, we will send the **Named Insured** any premium refund due. If **we** cancel, the refund will be pro rata. If the **Named Insured** cancels, the refund may be less than pro rata. The cancellation will be effective even if **we** have not made or offered any refund of unearned premium.

    f.  If notice is mailed, proof of mailing will be sufficient proof of notice.

**4.  Changes**

This policy contains all the agreements between **you** and **us** concerning the insurance afforded. The **Named Insured** shown in the Declarations is authorized to make changes in the terms of this policy upon **our** giving written consent. This policy's terms can be amended or waived only by endorsement to this policy issued by **us.**

**We** shall not be bound by any assignment of interest by any **insured** unless **our** consent to such assignment is endorsed onto this policy.

**5.  Duties In The Event Of Occurrence, Claim Or Suit**

    a.  **You** must see to it that **we** or **our** authorized representative are notified as soon as practicable of an **occurrence** or an **offense** which may result in a **claim.** To the extent possible, notice should include:

        (1)  How, when, and where the **occurrence** or alleged **offense** took place;

        (2)  The **insured's** name and address;

        (3)  The names and addresses of any injured persons or witnesses; and

        (4)  The nature and location of any injury or damage arising out of the **occurrence** or **offense.**

        Notice of an **occurrence** or an **offense** is not notice of a **claim.**

    b.  If a **claim** is made or **suit** is brought against any **insured**, **you** must:

        (1)  Immediately record the specifics of the **claim** or **suit** and the date received; and

        (2)  Notify **us** as soon as practicable.

        **You** must see to it that **we** also receive written notice of the **claim** or **suit** as soon as practicable.

    c.  **You** and any other **insured** involved in such **claim** or **suit** must:

        (1)  Immediately send **us** copies of any demands, notices, summonses or legal papers received in connection with the **claim** or **suit;**

        (2)  Authorize **us** to obtain records and other information;

        (3)  Cooperate with **us** in the investigation, settlement or defense of the **claim** or **suit;** and

        (4)  Assist **us**, upon **our** request, in the enforcement of any right against any person or organization which may be liable to the **insured** because of injury or damage to which this insurance may also apply.

    d.  No **insureds** will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense without **our** consent.

    e.  No **insureds** shall in any way jeopardize **our** rights after an **occurrence** or **offense.**

6. **Examination of Your Books and Records**

**We** may examine and audit **your** books and records as they relate to this policy at any time during the policy period set forth in Item 3 of the Declarations and up to three years afterward.

7. **Inspection and Surveys**

**We** have the right but are not obligated to:

a. Make inspections and surveys at any time;

b. Give **you** reports on the conditions **we** find; and

c. Recommend changes to such conditions.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. **We** do not make safety inspections. **We** do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. **We** also do no warrant that conditions:

a. Are safe or healthful; or

b. Comply with laws, regulations, codes or standards.

This condition applies not only to **us**, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations on **our** behalf.

8. **Legal Action Against Us**

No person or organization has a right under this policy:

a. To join **us** as a party or otherwise bring **us** into a **suit** asking for damages from an **Insured**; or

b. To sue **us** under this policy unless all of its terms have been fully complied with.

A person or organization may sue **us** to recover on an agreed settlement or on a final judgment against an **insured** obtained after an actual trial; but **we** will not be liable for damages that are not indemnifiable under the terms of this policy or that are in excess of the applicable Limit of Insurance. An agreed settlement means settlement and release of liability signed by **us**, the **insured** and the claimant or the claimant's legal representative.

9. **Maintenance of Underlying Insurance**

a. **You** must keep the **underlying insurance** described in The Schedule of Underlying Insurance of the Declarations, or renewal or replacement policies not more restrictive in their terms and conditions, in full force and effect during the policy period of this policy. The Limits of Insurance must be maintained without reduction other than by payment of losses covered thereunder. **You** must also inform **us** within 30 days of any cancellation of any policy of **underlying insurance**, or replacement of any policy of **underlying insurance**.

b. **You** must notify **us** immediately of any changes to the terms of any **underlying insurance** policies. **We** may adjust premium charges under this policy from the effective date of such changes to the terms of any **underlying insurance**.

c. **Your** failure to comply with the foregoing paragraphs **a.** and **b.** will not invalidate this policy, but in the event of such failure, **we** shall be liable under this policy only to the extent that **we** would have been liable had **you** complied with these obligations.

10. **Other Insurance**

If other valid and collectible insurance is available to the **insured** for **ultimate net loss** **we** cover under this policy, **our** obligations under this policy are limited as follows:

a. As this insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis, except such insurance as is specifically purchased to apply in excess of this policy's Limit of Insurance, **we** will indemnify only **our** share of the amount of **ultimate net loss**, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under this or any other insurance.

b. **We** will have no duty under Coverages A. or B. to defend any **claim** or **suit** that any other insurer has a duty to defend. If no other insurer defends, **we** may undertake to do so, but **we** will be entitled to the **insured's** rights against all other insurers.

11. **Premium Audit**

a. **We** will compute all premiums for this policy in accordance with **our** rules and rates.

b. Premium shown in this policy as advance premium is a deposit premium only. At the close of each audit period, **we** will compute the earned premium for that period. Audit premiums are due and payable on notice to the first **Named Insured**. If the sum of the advance and audit premiums paid for the policy term is greater than the earned premium, **we** will return excess to the first **Named Insured**, but not if such audit premium is less than the Minimum Premium shown in the Declarations.

c. The first **Named Insured** must keep records of the information **we** need for premium computation, and send **us** copies at such times as **we** may request.

## 12. Premiums

The first **Named Insured** shown in the Declarations:

a. Is responsible for the payment of all premiums; and

b. Will be the payee for any return premiums **we** pay.

## 13. Representations

By accepting this policy, **you** agree that:

a. The information shown on the Declarations is accurate and complete;

b. The information is based upon representations **you** made to **us** in **your** application(s) for this policy;

c. **We** have issued this policy in reliance upon **your** representations.

## 14. Separation of Insureds

Except with respect to the Limit of Insurance, and any rights and duties specifically assigned to the first **Named Insured**, this insurance applies:

a. As if each **Named Insured** were the only **Named Insured**; and

b. Separately to each **insured** against whom **claim** is made or **suit** is brought.

## 15. Sole Agent

The **Named Insured** first shown in Item 1 of the Declarations is authorized to act on behalf of all **insureds** with respect to giving or receiving notice of cancellation or nonrenewal, receiving refunds, and agreeing to any changes in this policy.

## 16. Transfer Of Rights Of Recovery Against Others To Us

If the **insured** has rights to recover all or part of any indemnification **we** have made under this policy, those rights are transferred to **us**. The **insured** must do nothing after loss to impair them. At **our** request, the **insured** will bring **suit** or transfer those rights to **us**.

Any recoveries shall be applied first to reimburse any interests (including the **insured**) that may have paid any amounts in excess of **our** liability under this policy; then to reimburse **us** for any indemnity hereunder; and lastly to reimburse such interests (including the **insured**) as to which this policy is excess, as are entitled to the residue, if any.

When **we** assist in pursuit of the **insured's** rights of recovery, reasonable expenses resulting therefrom shall be apportioned among all interests in the ratio of their respective recoveries.

## 17. Transfer of Your Rights and Duties Under This Policy

**Your** rights and duties under this policy may not be transferred without **our** written consent except in the case of death of an individual **Named Insured**.

If **you** die, **your** rights and duties will be transferred to **your** legal representative but only while acting within the scope of duties as **your** legal representative. Until **your** legal representative is appointed, anyone having proper temporary custody of **your** property will have **your** rights and duties but only with respect to that property.

## 18. When Loss Payable

**Our** liability for any portion of **ultimate net loss** shall not apply until the **insured** or any **underlying insurance** shall be obligated to actually pay the full and complete amount of the **retained limit**. When **ultimate net loss** has been finally determined, the **insured** may make **claim** for indemnity under this policy as soon as practicable thereafter. Such **insured's** obligation to pay any amount of **ultimate net loss** must have been finally determined either by judgment against the **insured** after actual trial or by written agreement of the **insured**, the claimant and **us**.

## 19. When We Do No Renew

If **we** decide not to renew this policy, **we** will mail or deliver to the first **Named Insured** shown in the Declarations written notice of the non-renewal not less than 60 days before the expiration date or such other period as may be required by law.   If notice is mailed or delivered later than the 60th day before the expiration date, the coverages shall remain in effect until the 61st day after the date on which the notice is mailed or delivered.  Earned Premium for any period of coverage that extends beyond the expiration date of the policy shall be computed Pro-Rata on the previous years rate.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION VI - DEFINITIONS

1. **Advertising injury** means injury arising out of one or more of the following **offenses:**

   a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

   b. Oral or written publication of material that violates a person's right of privacy;

   c. Misappropriation of advertising ideas or style of doing business; or

   d. Infringement of copyright, title or slogan.

2. **Auto** means a land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment.  However, **auto** does not include **mobile equipment.**

3. **Automobile hazard** means liability arising out of the ownership, use (including maintenance or repair), **loading or unloading** of any **auto.**

4. **Bodily injury** means bodily injury, sickness or disease sustained by a natural person.  This includes death, shock, fright, mental anguish, mental injury, or disability which results from any of these at any time.

5. **Claim** means any demand upon the **insured** of damages or services alleging liability of the **insured** as the result of an **occurrence** or **offense.**

6. **Coverage territory** means anywhere in the world if the **insured's** responsibility to pay damages is determined in a **suit** on the merits, in the United States of America (including its territories and possessions), Puerto Rico or Canada, or in a settlement **we** agree to.

7. **Impaired property** means tangible property, other than **your product** or **your work**, that cannot be used or is less useful because:

   a. It incorporates **your product** or **your work** that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. **You** have failed to fulfill the terms of a contract or agreement;

   If such property can be restored to use by:

   (1) The repair, replacement, adjustment or removal of **your product** or **your work**; or

   (2) **Your** fulfilling the terms of the contract or agreement.

8. **Insured contract** means:

   a. A lease of premises;

   b. A railroad sidetrack agreement;

   c. Any easement of license agreement except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement; or

   f. That part of any other contract or agreement pertaining to **your** business (including an indemnification of a municipality in connection with work performed for a municipality) under which **you** assume the tort liability of another party to pay for **bodily injury** or **property damage** to a third person or organization. Tort liability means a liability that would be imposed by law for injury to persons or property in the absence of any contract or agreement.

   An **insured contract** does not include that part of any contract or agreement:

   (1) That indemnifies any person or organization for **bodily injury** or **property damage** arising out of construction or demolition operations within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road beds, tunnel, underpass or crossing;

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

(a) Preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specification; or

(b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage;

(3) Under which the **insured**, if an architect, engineer or surveyor, assumes liability for injury or damage arising out of the **insured's** rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection or engineering services; or

(4) That indemnifies any person or organization for damage by fire to premises rented or loaned to **you**.

9. **Loading** or **unloading** means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or **auto**;

b. While it is in or on an aircraft, watercraft or **auto**; or

c. While it is being moved from an aircraft, watercraft or **auto** to the place where it is finally delivered.

But **loading** or **unloading** does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or **auto**.

10. **Mobile equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises **you** own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, on which are permanently mounted:

(1) Power cranes, shovels, loaders, diggers or drills; or

(2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a., b., c. or d. immediately preceding that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

(1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

(2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b., c., or d. of this section maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not **mobile equipment** but will be considered **autos**:

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobiles or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well servicing equipment.

11. **Occurrence** means:

a. With respect to **bodily injury** or **property damage**, an accident, including continuous or repeated exposure to substantially the same general harmful conditions. This does not apply to **your** liability (other than under a contract or agreement) for **bodily injury** to **your** employees arising out of and in the course of employment by **you**; or

b. With respect to **your** liability (other than under a contract or agreement) for **bodily injury** to **your** employees arising out of and in the course of employment by **you**, **bodily injury** caused by accident or disease.

12. **Offense** means any of the **offenses** included in the definitions of **advertising injury** or **personal injury**.

13. **Personal injury** means injury, other than **bodily injury**, arising out of one or more of the following **offenses:**

a. False arrest, detention or imprisonment;

   **b.** Malicious prosecution;

   **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

   **d.** Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

   **e.** Oral or written publication of material that violates a person's right of privacy.

**14. Pre-judgment interest** means interest added to a settlement, verdict, award or judgment based on the amount of time prior to the settlement, verdict, award or judgment whether or not made part of the settlement, verdict, award or judgment.

**15. a. Products-completed operations hazard** includes all **bodily injury** or **property damage** occurring away from premises **you** own or rent and arising out of **your product** or **your work** except:

     (1) Products that are still in **your** physical possession; or

     (2) Work that has not yet been completed or abandoned.

   **b. Your work** will be deemed completed at the earliest of the following times:

     (1) When all of the work called for in **your** contract has been completed;

     (2) When all of the work to be done at the site has been completed if **your** contract calls for work at more than one site;

     (3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

   **c.** This hazard does not include **bodily injury** or **property damage** arising out of:

     (1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the **loading** or **unloading** of it; or

     (2) The existence of tools, uninstalled equipment or abandoned or unused materials.

**16. Property damage** means:

   **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

   **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the **occurrence** that caused it.

**17. Retained limit** means the greater of:

   **a.** The sum of amounts applicable to any **claim** or **suit** from:

     (1) **Underlying insurance**, whether such **underlying insurance** is collectible or not; and

     (2) Other collectible primary insurance; or

   **b.** The **self-insured retention.**

**18. Self-insured retention** means the amount in Item 3 of the Declarations.

**19. Suit** means a civil proceeding in which damages because of **advertising injury, bodily injury, personal injury** or **property damage** to which this insurance applies are alleged. **Suit** includes:

   **a.** An arbitration proceeding in which such damages are claimed and to which the **insured** must submit or submits with **our** consent; or

   **b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the **insured** submits with **our** consent.

**20. Ultimate net loss** means the total amount of damages for which the **insured** is legally liable in payment of **bodily injury, property damage, personal injury,** or **advertising injury. Ultimate net loss** must be fully determined as shown in SECTION V - CONDITIONS Item 18. When Loss Payable. **Ultimate net loss** shall be reduced by any recoveries or salvages which have been paid or will be collected, but the amount of **ultimate net loss** shall not include any expenses incurred by any **insured**, by **us** or by any **underlying insurance.**

**21. Underlying insurance** means the coverage(s) afforded under insurance policies designated in The Schedule of Underlying Insurance of the Declarations and any renewals or replacements of those policies.

**22. Underlying insurer** means any company issuing any policy of **underlying insurance.**

**23. Your product** means:

**MU 60 01 (01 03)**

   **a.** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

     **(1)** You;

     **(2)** Others trading under **your** name; or

     **(3)** A person or organization whose business or assets **you** have acquired; and

   **b.** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**Your product** includes:

   **a.** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of **your product**; and

   **b.** The providing of or failure to provide warnings or instructions.

**Your product** does not include vending machines or other property rented to or located for the use of others but not sold.

**24. Your work** means:

   **a.** Work or operations performed by **you** or on **your** behalf; and

   **b.** Materials, parts or equipment furnished in connection with such work or operations.

**Your work** includes:

   **a.** Warranties or representation made at any time with respect to the fitness, quality, durability, performance or use of **your work**; and

   **b.** The providing of or failure to provide warnings or instructions.

# COMMERCIAL UMBRELLA POLICY

## Exclusion - <u>ASBESTOS</u>

This insurance does not apply to:

1. **Bodily injury, property damage, personal injury, or advertising injury** arising out of, resulting from, caused or contributed to by asbestos or exposure to asbestos; or

2. The costs of abatement, mitigation, removal or disposal of asbestos.

This exclusion also includes:

a. Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with the above; and

b. Any obligation to share damages with or repay someone else who must pay damages because of such injury or damage.

MU 6008 (01 98)

## COMMERCIAL UMBRELLA POLICY

## Follow Form  -  <u>AUTO LIABILITY</u>

Except to the extent that coverage is provided in **underlying insurance,** this insurance does not apply to **bodily injury** or **property damage** arising out of the ownership, maintenance, operation, use, or entrustment of any **auto**:

1. While away from premises **you** own, rent, or occupy;

   or

2. Owned by or rented or loaned to any **insured.**

   Use includes operation and **loading or unloading.**

MU 6013 (01 98)

# COMMERCIAL UMBRELLA POLICY

# EXCLUSION  CARE, CUSTODY OR CONTROL

This insurance does not apply to **property damage** to:

1.) Property Rented or occupied by any **insured;**

2.) Property loaned to any **insured; or**

3.) Personal property in the care, custody or control of any **insured.**

MU 6015 (01 98)

# COMMERCIAL UMBRELLA POLICY

## Exclusion  -  <u>CROSS SUITS</u>

This insurance does not apply to **bodily injury, property damage, advertising injury or personal injury** sustained by **you**, provided such injury or damage arises out of the activities of any other person or organization qualifying as a **Named Insured** under this policy.

MU 6020 (01 98)

## COMMERCIAL UMBRELLA POLICY

# Exclusion - <u>EMPLOYEE RETIREMENT INCOME SECURITY ACT</u>

This insurance does not apply to injury or damage arising out of the Employee Retirement Income

Security Act of 1974 (ERISA), or any amendments or additions thereto.

MU 6021 (01 98)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

## COMMERCIAL UMBRELLA POLICY

## EMPLOYERS LIABILITY LIMITATION

This insurance does not apply to **bodily injury** (other than liability assumed by the insured under an "insured contract") to:

1.  An employee of the insured arising out of and in the course of employment by the insured; or

2.  The spouse, child, parent, brother or sister of that employee as a consequence of **1.** above.

This exclusion applies:

1.  Whether the insured may be liable as an employer or in any other capacity; and

2.  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to **bodily injury** for which coverage is provided in **underlying insurance** under either:

1.  A Workers Compensation and Employers Liability Insurance Policy promulgated by the National Council on Compensation Insurance (copyright 1982, and subsequent); or

2.  Commercial General Liability Insurance Policy which:

    a.  Insures your direct liability for **bodily injury** to your employees arising out of and in the course of their employment by you; and

    b.  Only applies to such injury in **a.** above when such employment is subject to the Workers Compensation law(s) of Nevada, Washington, West Virginia, North Dakota, Ohio, Montana or Wyoming.

## COMMERCIAL UMBRELLA POLICY

# OIL INDUSTRIES LIMITATION ENDORSEMENT

A.    It is agreed that this insurance does not apply to:

1.    Fines, penalties, punitive or exemplary damages arising from the cost to remove, nullify or clean up seeping, polluting or contaminating substances.

2.    Loss of, damage to, or loss of use of property directly or indirectly resulting from subsidence caused by subsurface operations of the **Insured.**

3.    Removal of, loss of, or damage to subsurface oil, gas or any other substance, the property of others.

4.    Loss of hole, well, or reservoir and any in-hole equipment, including fishing costs.

5.    Damages claimed by any co-owner of the working interest arising from operations in which the **Insured** is a co-owner of the same working interest.

6.    Any cost or expenses incurred by or at the request of the **Insured** of any co-owner of the working interest in connection with controlling or bringing under control any oil, gas or water well which becomes out of control.

   A well shall be deemed "out of control" only so long as there is a continuous flow of drilling fluid, oil, gas or water above the surface of the ground which is uncontrollable.

7.    Loss or damage to drilling rigs, drilling or production platforms, work-over rigs and servicing rigs.

8.    Loss or damage to specialty contractors equipment in the **Insured's** care, custody or control.

9.    Damage to or destruction of underground property defined below as **underground resources and equipment hazard.**

B.    It is further agreed that except to the extent coverage is available to the **Insured** in the underlying insurance at the limits specified in the Schedule of Underlying Insurance and not specifically excluded above, this policy does not apply to:

1.    Liability arising out of work or operations performed on any oil or gas lease at locations:

   (a)    within the limits of any town or city, or:
   (b)    on the right-of-way of any railroad

2.    Liability assumed by the **Insured** under contract.

All other terms and conditions remain unchanged.

**DEFINITIONS**

**Underground resources and equipment hazard** includes **property damage** to any of the following:

   (a)    oil, gas, water or other mineral substances which have not been reduced to physical possession above the surface of the earth or above the surface of any body of water;

   (b)    any well, hole, formation, strata or area in or through which exploration for or production of any substance is carried on;

(c)    any casing, pipe, bit, tool, pump or other drilling or well servicing machinery or equipment located beneath the surface of the earth in any such well, hole, or beneath the surface of any body of water.

# TEXAS CHANGES - CANCELLATION AND NONRENEWAL -
# COMMERCIAL UMBRELLA POLICY

It is understood and agreed MU 6001 is modified by deleting Sections V, 3, b, and Section V, 19 and replacing them by the following:

3.  b.   We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation, state the reason for cancellation, at least 10 days before the effective date of cancellation.

However, if this policy covers a condominium association, and the condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then the notice of cancellation, as described above, will be provided to the First Named Insured 30 days before the effective date of cancellation. We will also provide 30 days' written notice to each unit-owner to whom we issued a certificate or memorandum of insurance, by mailing or delivering the notice to each last mailing address known to us.

The permissible reasons for cancellation are as follows:

    (1)   If this policy has been in effect for 60 days or less, we may cancel for any reason except, that under the provisions of the Texas Insurance code, we may not cancel this policy solely because the policyholder is an elected official.;

    (2)   If this policy has been in effect for more than 60 days, or if it is a renewal or continuation of a policy issued by us, we may cancel only for one or more of the following reasons:

        I.     Fraud in obtaining coverage;

        II.    Failure to pay premiums when due;

        III.   An increase in hazard within the control of the insured which would produce an increase in rate;

        IV.    Loss of our reinsurance covering all or part of the risk covered by the policy; or

        V.     If we have been placed in supervision, conservatorship or receivership and the cancellation is approved or directed by the supervisor, conservator or receiver.

19.   When We Do Not Renew

    a.   We may elect not to renew this policy except, that under the provisions of the Texas Insurance Code, we may not refuse to renew this policy solely because the policyholder is an elected official.

    b.   This paragraph b., applies unless the policy qualifies under paragraph c. below. If we elect not to renew this policy, we may do so by mailing or delivering to the first Named Insured, at the last mailing address known to us, written notice or NONRENEWAL, stating the reason for NONRENEWAL, at least 60 days before the expiration date. If notice is mailed or delivered less than 60 days before the expiration date, this policy will remain in effect until the 61st day after the date on which the notice is mailed or delivered. Earned premium for any period of coverage that extends beyond the expiration date will be computed pro rata based on the previous year's premium.

    c.   If this policy covers a condominium association, and the condominium property contains at least one residence or the condominium declarations conform with the Texas Uniform Condominium Act, then we will mail or deliver written notice of nonrenewal, at least 30 days before the expiration or anniversary date of the policy, to:

        I.     The first Named Insured; and

        II.    Each unit-owner to whom we issued a certificate or memorandum of insurance.

We will mail or deliver such notice to each last mailing address known to us.

    d.   If notice is mailed, proof of mailing will be sufficient proof of notice.

    e.   The transfer of a policyholder between admitted companies within the same insurance group is not considered a refusal to renew.

MU 6073 (04 98)

# COMMERCIAL UMBRELLA POLICY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION - LEAD

This insurance does not apply to:

1.  Bodily injury, Property Damage, Personal Injury or Advertising Injury arising out of the actual or alleged presence or

2.  The actual, alleged or threatened dispersal of lead, lead particles or products containing lead, provided that the injury or damage is caused or contributed to by the hazardous properties of lead.

This exclusion also includes:

a.  Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with the above; and

b.  Any obligation to share damages with or repay someone else who must pay damages because of such injury or damage.

MU 60 76 (04 97)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

# FUNGUS, MILDEW AND MOLD EXCLUSION

This insurance does not apply to:

1. "Bodily injury", "property damage", "personal or advertising injury" or "medical payments" arising out of, resulting from, caused by, contributed to, attributed to, or in any way related to any fungus, mildew, mold or resulting allergens;

2. Any costs or expenses associated, in any way, with the abatement, mitigation, remediation, containment, detoxification, neutralization, monitoring, removal, disposal or any obligation to investigate or assess the presence or effects of any fungus, mildew, mold or resulting allergens; or

3. Any obligation to share with or repay any person, organization or entity, related in any way to items **1** and **2**.

MU 61 40 (04 01)                                                                                       Page 1 of 1

**POLICY HOLDER NOTICE**

**TEXAS UMBRELLA LIABILITY EXCLUSION**

**LEAD EXCLUSION**

YOUR POLICY CONTAINS AN ENDORSEMENT THAT EXCLUDES UMBRELLA LIABILITY COVERAGE FROM APPLYING DUE TO EXPOSURE TO LEAD.  THE <u>LEAD LIABILITY EXCLUSION</u> FORM NUMBER IS ENDORSEMENT MU 6076 (01 98).

PLEASE READ YOUR POLICY AND ANY APPLICABLE EXCLUSIONS CAREFULLY.  IF YOU HAVE ANY QUESTIONS REGARDING YOUR POLICY COVERAGES OR EXCLUSIONS, PLEASE CONTACT YOUR AGENT FOR AN EXPLANATION.

**MU 61 02 (04 98)**

**POLICY HOLDER NOTICE**

**TEXAS UMBRELLA LIABILITY EXCLUSION**

**ASBESTOS EXCLUSION**

YOUR POLICY CONTAINS AN ENDORSEMENT THAT EXCLUDES UMBRELLA LIABILITY COVERAGE FROM APPLYING DUE TO EXPOSURE TO ASBESTOS.  THE ASBESTOS LIABILITY EXCLUSION FORM IS ENDORSEMENT MU 6008 (1 98).

PLEASE READ YOUR POLICY AND ANY APPLICABLE EXCLUSIONS CAREFULLY.  IF YOU HAVE ANY QUESTIONS REGARDING YOUR POLICY COVERAGES OR EXCLUSIONS, PLEASE CONTACT YOUR AGENT FOR AN EXPLANATION.

MU 61 03 (04 98)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

# EMPLOYERS' LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE PART

EMPLOYERS' LIABILITY/OBLIGATIONS TO EMPLOYEES

This insurance does not apply:

1.  To any liability or obligation for which any "insured", or any company as its insurer, may be held liable under:
    a.  workers' compensation;
    b.  unemployment compensation;
    c.  disability benefits;
    d.  under any similar laws; and
2.  To any liability or obligation for which any "insured", or any company as its insurer, may be held liable to any person or entity, including any other "insured", as a result of "bodily injury" to any employee sustained in the course of employment or supervision by an "insured"; or
3.  To any liability of any "insured" arising out of any claim by the spouse, child, parent, or sibling of the employee of any "insured" arising out of "bodily injury" to an employee of the nature specified in 1 or 2 above; or
4.  To any liability of any "insured" to defend, indemnify, share payments or damages with, or repay anyone on account of any obligation arising out of "bodily injury" to any employee of the nature specified in 1 or 2 above.

This exclusion shall be effective regardless of whether the liability or obligation is asserted directly or indirectly against any "insured" as an employer, contractor, subcontractor, third party defendant, or in any other capacity.

This exclusion shall be effective regardless of any severability clause in an underlying policy or any similar clause therein which provides that the insurance is severable as to each "insured" or that each "insured" is to be treated as if it were the only "insured" under the policy.

All Other Terms and Conditions Remain Unchanged.

MU 61 50 (06 02)                                                                                   Page 1 of 1

NOTICE OF AVAILABILITY OF LOSS CONTROL SERVICES


THE STATE OF TEXAS


TO ALL COMMERCIAL INSURANCE POLICYHOLDERS:

Thank you for placing your commercial insurance with us.

This letter is to inform you that Mid-Continent Group has Safety Engineering/Loss Control Services to assist you with your safety and loss control activities.

An effective loss prevention program is one way responsible employers help to control cost.  In an effort to assist in developing an effective accident prevention program, the Safety Engineering/Loss Control Department of Mid-Continent Group is available to:

- evaluate the accident prevention activities currently being implemented to identify strengths and weaknesses.

- conduct surveys of physical conditions and operational work practices to assist in accident prevention.

- analyze accident data to determine frequency and severity trends.

- consult in administrative procedures and supervisory training for exposure recognition and reduction.

If any time we can be of service, please feel free to contact our Safety Engineering/Loss Control Department at (713) 334-0050.

Sincerely,



Mid-Continent Group
Don T. Thompson, P.E.
Safety Engineering/Loss Control
Manager




MI 9002 (06 00)

CONTACT INFORMATION SHEET

| IMPORTANT NOTICE | AVISO IMPORTANTE |
|---|---|

To obtain information or make a complaint:

Para obtener informacion o para someter una queja:

You may call Mid-Continent Casualty Group's toll-free telephone number for information or to make a complaint at;

Usted puede llamar al numero de telefono gratis de Mid-Continent Casualty Group's para informacion o para someter una queja al:

1-800-722-4994

1-800-722-4994

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

Puede comunicarse con el Departamento de Seguros do Texas para obtene informacion acerca do companias, coberturas, derechos o quejas al:

1-800-252-3439

1-800-252-3439

You may write the Texas Department of Insurance at:

Puede escribir el Departamento do Seguros de Texas:

P. O. Box 149104
Austin, Texas 78714-9104

P. O. Box 149104
Austin, TX 78714-9104

FAX #(512) 475-1771

FAX #(512) 475-1771

PREMIUM OR CLAIM DISPUTES:
Should you have a dispute concerning your premium or about a claim you should contact the agent or Mid-Continent Casualty Group first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

DISPUTAS SOBRE PRIMAS O RECLAMOS: Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con al agente o Mid-Continent Casualty Group primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

ATTACH THIS NOTICE TO YOUR POLICY:
This notice is for information only and does not become a part or condition of the attached document.

UNA ESTE AVISO A SU POLIZA:
Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

MI 9014 (03 98)

## MID-CONTINENT GROUP®
## PRIVACY NOTICE
## AND
## NOTICE OF INFORMATION PRACTICES

The member of Mid-Continent Group ("Mid-Continent," including those companies listed at the end of this Notice) respect your right to privacy.

We want you to know about our procedures for protecting your privacy and your rights and responsibilities regarding information we receive about you. We want you to understand how we gather information about you, how we protect it, and how you can help ensure its accuracy. Although we may provide this Notice as information to additional persons, the terms of this Notice apply to those individuals who inquire about or obtain insurance from Mid-Continent primarily for personal, family or household purposes, and certain group insurance plans. We will provide our customers with a copy of the most recent notice of our privacy policy at least annually and more often if we make any changes affecting their rights under our privacy policy. This Notice applies to current and former customers of Mid-Continent, but does not in any way imply or affect insurance coverage. You can find the online version of this Notice on our web site at www.mcg-ins.com.

Because Mid-Continent does not share your information outside of permitted exceptions, there is no need for you to take any action under this Notice. If we change our practices in the future, we will advise you and, if applicable, enable you to "opt-out" of certain sharing.

1.   **What kind of information is collected about you?**

We get most of our information about you directly from you, such as your name, address, social security number, income level and certain other financial information, on insurance applications and other forms that you provide to us. While in some cases the information you provide to your insurance representative during the insurance application process gives us all the information we need to evaluate you or your property for insurance, there are instances when we may need additional information or may need to verify information you have given us. In those cases, we may obtain information from outside sources at our own expense.

It is common for an insurance company to ask an independent source to verify and supplement information given on an insurance application. There are many such independent companies, commonly called "consumer reporting agencies," which are in the business of providing independent information to insurance and other financial services companies. We will treat the information we receive about you from an independent reporting agency in accordance with the terms of this Notice. Upon our receipt of your written request sent to the address set forth in Section 5, we will inform you of the name and address of any agency we have used to prepare a report on you so that you can contact the agency.

Once you have been an insured customer of ours for a period of time, your record may contain information related to our experiences and transactions with you, such as insurance policy coverage, premiums and payment history, and any claims you make under your insurance policy. For example, information collected by a claims representative and any policy or fire report will be retained by us. Any information that we collect in connection with an insurance claim will be kept in accordance with this Notice.

Each company within Mid-Continent Group may disclose information about you to an affiliate regarding its transactions and experiences with you (such as your payment or claims history). We do not currently share other credit-related information, except as permitted or required by law.

Finally, we do use "cookies" when you interact with our web sites to make that experience easy and meaningful for you. When you visit our web site, our web server sends a cookie to your computer. A cookie is an electronically transmitted file that holds small pieces of information. When you navigate through our web site, your browser "requests" pages for you to view, and that request will include the information stored in the cookie we previously sent to your computer. This process is like an electronic "handshake" between our system and your computer; the information exchanged allows us to recognize your browser.

Cookies are used to collect and store only the following information: the visitor's domain name, the Internet address of the web site from which the visitor linked directly to our web site, the pages of our site that the visitor views and the length of time spent on each page, browser and operating system platform type, and the date and time the visitor accessed our site.

MI 90 46 (05 01))                                                                                    Page 1 of 3

Cookies, as well as data taken from them, do not identify you personally. They merely recognize your browser. Unless you choose to identify yourself to us, either by responding to a promotional offer, buying a policy, or registering for an online service, you remain anonymous.

Session cookies exist only during an online session with Mid-Continent. Session cookies allow you to conduct transactions or requests on our site. Without the session cookie information, we would not be able to complete your web transactions securely. Session cookies help us make sure you are who you say you are after you have logged in. We do not sell this or any other information about you to other web sites, merchants or financial institutions.

**2.   What do we do with information about you?**

Information about you will be kept in our insurance policy records. We will refer to and use that information for purposes related to issuing and servicing insurance policies and settling claims. Generally, personal information about you in our records will not be disclosed by us to any external organization without your prior authorization. However, we may, as permitted by law, share information about you contained in our files with certain persons or organizations such as:

your insurance representative,

persons who represent you in a fiduciary capacity, including your attorney or trustee, or who have a legal interest in your insurance policy,

adjusters, appraisers, auditors, investigators and attorneys,

persons or organizations who need the information to perform a business, professional or insurance function for us,

other insurance companies, agents or consumer reporting agencies as information is needed in connection with any insurance application, policy or claim involving you,

medical professionals to inform you of a medical condition of which you may not be aware,

persons or organizations that conduct research, including actuarial or underwriting studies, provided that no individual information may be identified in any research study report,

persons or organizations that perform marketing services on our behalf or to other financial institutions with whom we have joint marketing agreements,

our affiliated companies,

to a court, state insurance department or other government agency pursuant to a summons, court order, search warrant, subpoena, or as otherwise required by law or regulation.

**3.   Who has access to your information?**

Mid-Continent currently incorporates a system of passwords and other appropriate physical, electronic and procedural safeguards to protect against unauthorized access to potentially private information. We will educate our employees about the terms of this Notice and the importance of confidentiality and customer privacy. Employees who gain unauthorized access or who otherwise violate our privacy policy are subject to disciplinary action up to and including termination of employment. We plan to monitor and evaluate our information security program and available security software in light of relevant changes in technology to determine ways to increase protections to the security or integrity of our records and information.

MI 90 46 (05 01))

4.   **How can you review recorded information about you?**

Generally, you have the right to review and receive a copy of the recorded personal information about you contained in our files with respect to a particular policy number, except for certain legal and medical documents.  You have the further rights to request that we correct any of this information.  To exercise these rights, you must send to us a notarized request at the address set forth below stating your complete name, address, insurance policy number, daytime phone number, and a copy of your driver's license or other personal identification.  If you believe any information is incorrect, we will investigate and correct it if we can substantiate the error.  Even if we do not correct the information, you have the right to file with us a written statement of dispute which we will include in any future disclosure of the information.

5.   **How can you contact us?**

If, after reading this, you have any questions about our privacy policy, please write to us at the following address:

MID-CONTINENT GROUP
1437 S. Boulder
Suite 200
Tulsa, OK 74119
Attn: Compliance Office - Privacy

Mid-Continent Casualty Company
Mid-Continent Insurance Company
Oklahoma Surety Company

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## POLICY CHANGES

Policy Change .
Number: 1

| POLICY NUMBER<br><br>XS 125125 | POLICY CHANGES<br>EFFECTIVE<br><br>6/30/03 | COMPANY<br><br>Mid-Continent Casualty Company |
|---|---|---|
| NAMED INSURED<br><br>Bay Rock Operating Company<br>John MacDiarmid<br>A.N. MacDiarmid Company | | AUTHORIZED REPRESENTATIVE<br>42-210<br>Eichlitz, Dennis, Wray & Westheimer |

| COVERAGE PARTS AFFECTED |
|---|
|   |

| CHANGES |
|---|
| In Consideration of no change in premium, it is hereby agreed to amend the following:<br><br>Amending Named Insured to read as follows:<br><br>A.N. MacDiarmid Company |

Authorized Representative Signature

DRG: 08/26/03

IL 12 01 11 85          Copyright, Insurance Services Office, Inc., 1983          Page 1 of 1
Copyright, ISO Commercial Risk Services, Inc., 1983

In Witness Whereof, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

*L. Jay Jessee*     **Secretary**                              *President*

# EXHIBIT "P-3"

# ST. PAUL CONTROL OF WELL POLICY

Mid: 010747\000004\571259.1

This insurance contract is with an insurer not licensed to transact insurance in this state and is issued and delivered as a surplus line coverage pursuant to the Texas Insurance Statutes. The Texas Department of Insurance does not audit the finances or review the solvency of the surplus lines insurer providing this coverage, and this insurer is not a member of the Property and Casualty Insurance Guaranty Association created under Article 21.28-C, Insurance Code. Article 1.14-2, Insurance Code, requires payment of 4.85 percent tax on gross premium.

HOL 01666

IMPORTANT NOTICE

To obtain information or make a complaint:

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

1-800-252-3439

You may write the Texas Department of Insurance:

Post Office Box 149104
Austin, Texas 78714-9104
Fax #(512)475-1771

PREMIUM OR CLAIM DISPUTES:

Should you have a dispute concerning your premium or about a claim you should contact the agent first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

ATTACH THIS NOTICE TO YOUR POLICY

This notice is for information only and does not become a part of condition of the attached document.

AVISO IMPORTANTE

Para obtener informacion o para someter una queja:

Puede comunicarse con el Departmento do Seguros de Texas para obtener informacion acerca de companieas, coberturas, derechos o quejas al:

1-800-252-3439

Puede escribir al Departmento de Seguros de Texas:

Post Office Box 149104
Austin, Texas 78714-9104
Fax # (512)475-1771

DISPUTAS SOBRE PRIMAS O RECLAMOS

Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente primero. Si no se resuleva la disputa, puede entonces comunicarse con el departmento (TDI).

UNA ESTA AVISO A SU POLIZA:

Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

The St.Paul

# DECLARATIONS –
## CONTROL OF WELL INSURANCE

St. Paul Surplus Lines
Insurance Company
385 Washington Street
Saint Paul, MN 55102-1396
A stock company

**Policy Number:**   MU05505777

**Renewal of:**   MU05505142

Broker No: 5930562
Swett  & Crawford
1201 Elm Street, #5353
Dallas, Texas 75270

**Item 1.**   **Named Insured:**   **Hollimon Oil Company; J. Charles Hollimon Inc.**

and/or subsidiary, associated, affiliated companies or owned and controlled companies, as now or hereafter constituted, including principals, officers, directors, stockholders and employees of all Named Insureds while acting within the scope of their duties as such and as their interests may appear.

**Address:**   303 W. Sunset, Suite 200
San Antonio, TX  78209

**Item 2.**   **Insured's Operations:**   OPERATOR / NON-OPERATOR

**Item 3.**   **Loss Payee:**   Loss, if any, payable to Named Insured or order.

**Item 4.**   **Territory:**   Anywhere in the world.

**Item 5.**   **Policy Period:**   **From:**  08/19/2002      **To:**  08/19/2003
12:01 A.M. Standard Time at the address shown in Item 1. above.

**Item 6.**   **Coverage:**   Control of Well Insurance, and as otherwise provided by this policy.  See Policy Forms List OG801 for forms and endorsements made part of this policy.

**Item 7.**   **Limit(s) of Liability:**   $ 1,000,000   any one Occurrence, in respect of 100% interest, subject to a Combined Single Limit of liability for all coverages provided under Section I-wells 0 to 5,000 feet.

$ 5,000,000   any one Occurrence, in respect of 100% interest, subject to a Combined Single Limit of liability for all coverages provided under Section I-wells 5,001 to 7,500 feet.

$ 10,000,000   any one Occurrence, in respect of 100% interest, subject to a Combined Single Limit of liability for all coverages provided under Section I-wells exceeding 7,500 feet.

$    500,000   any one Occurrence, in respect of 100% interest.
Care, Custody and Control

**Item 8.**   **Insured's Retention(s)/ Deductible(s):**   The Limit of Liability specified in Item 7. of these Declarations is subject to the following Insured's Retention(s)/Deductible(s):

wells 0' to 7,500'   Section IA: $    150,000  any one Occurrence, in respect of 100% interest

Section IB: $  any one Occurrence, in respect of 100% interest

Section IC: $  any one Occurrence, in respect of 100% interest

wells over 7,500'   Section IA: $    250,000  any one Occurrence, in respect of 100% interest

Section IB: $  any one Occurrence, in respect of 100% interest

Section IC: $  any one Occurrence, in respect of 100% interest

Care, Custody and Control, if endorsed hereto:

$    25,000  any one Occurrence, in respect of 100% interest

---

HOL 01668

**The St Paul**

| Item 9. | Rates: | | See Rate Schedule OG802 made part of this policy. |
|---|---|---|---|
| Item 10. | Premium/Fees/<br>Taxes | $ 189,000.00 | Drilling Minimum Earned & Deposit |
| | | $     NONE | Annual Producing Premium |
| | | $     250.00 | Policy Fee |
| | | $   9,178.63 | Surplus Lines Tax  (4.85 %) |
| | | $     283.88 | Stamping Fee (.15 %) |
| | | $ 198,712.51 | Total Premium/Fees/Taxes |
| Item 11. | Minimum<br>Premium: | $ 189,000.00 | |

The Company hereby agrees with the Named Insured in the Declarations made of this policy (hereof), in consideration of the payment of the premium and in reliance upon the statements in the Declarations, to provide insurance to the Named Insured in accordance with the terms stated in the Declarations, and in the documents attached hereto and incorporated in this policy.

IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

| | | |
|---|---|---|
| _____ | Dallas, TX | August 28, 2002 |
| Countersignature | Dated At | Date |

| | | |
|---|---|---|
| _Secretary_ | | _President_ |

OG800 Ed. 10-01 Printed in U.S.A.
©St. Paul Surplus Lines Insurance Company.  2001 All Rights Reserved

Declarations

HOL 01669

The St Paul

| | | | |
|---|---|---|---|
| POLICY PERIOD: | 08/19/2002 | To: | 08/19/2003 |
| POLICY NUMBER: | MU05505777 | | |
| EFFECTIVE DATE: | 08/19/2002 | | |
| INSURED: | Hollimon Oil Company | | |

## POLICY FORMS LIST

This is a list of all the forms and endorsements included in your policy.

| | |
|---|---|
| Declarations – Control Of Well Insurance | OG800 (10-01) |
| Policy Forms List | OG801 (10-01) |
| Rate Schedule | OG802 (10-01) |
| Care, Custody, And Control Endorsement | OG803 (10-01) |
| Underground Control of Well | SPA-400-01 |
| Extended Redrill and Restoration Costs | SPA-400-03a |
| Evacuation Expense | SPA-400-04 |
| Making Wells Safe | SPA-400-05a |
| Turnkey Endorsement (Operator) | SPA-400-07a |
| Removal of Wreckage and Debris | SPA-400-14 |
| Information Technology Hazards Clause Endorsement | SPA-400-51 |

The St Paul

| POLICY PERIOD: | 08/19/2002 | To: | 08/19/2003 |
|---|---|---|---|
| POLICY NUMBER: | MU05505777 | | |
| EFFECTIVE DATE: | 08/19/2002 | | |
| INSURED: | Hollimon Oil Company | | |

The following is added to Item 9. of the Declarations.

## RATE SCHEDULE

The following rates apply Sections IA, IB, and IC:

**a.   SCHEDULE OF DRILLING RATES**

Rates herein are payable on each foot drilled, each Well.

| | Vertical Depth | Area I | Area II | Area II (Wet) |
|---|---|---|---|---|
| A) | 0 - 5,000' | $TBA | $ .897 | $ TBA |
| B) | 5,001 - 7,500' | $TBA | $2.423 | $ TBA |
| C) | 7,501 - 12,500' | $TBA | $4.394 | $ TBA |
| D) | 12,501 - 17,500' | $TBA | $6.590 | $ TBA |
| E) | 17,501 - 20,000' | $TBA | $TBA | $ TBA |

| | | Area III | Area IV | Area V |
|---|---|---|---|---|
| A) | 0 - 5,000' | $ TBA | $ TBA | $ TBA |
| B) | 5,001 - 7,500' | $ TBA | $ TBA | $ TBA |
| C) | 7,501 - 12,500' | $ TBA | $ TBA | $ TBA |
| D) | 12,501 - 17,500' | $ TBA | $ TBA | $ TBA |
| E) | 17,501 - 20,000' | $ TBA | $ TBA | $ TBA |

**The St Paul**

It is understood and agreed that Wells being drilled on a horizontal basis and/or Wells producing while drilling and/or drilled Underbalanced Wells shall be surcharged as follows:

Rates To Be Agreed prior to spud.

See Endorsement No. SPA-400-7a Turnkey Contract rating provisions.

**b.   RATES FOR OTHER THAN DRILLING**

   i)   Producing Wells:
        EXCLUDED

   ii)  Shut-in, Temporarily Abandoned Wells:
        EXCLUDED

   iii) Plugged and Abandoned Wells:
        EXCLUDED

   iv)  Workover Wells:
        Excluded unless reported to and agreed by Company prior to commencement of work.

   v)   Deepening Wells:
        To be rated on basis of final completion depth at scale drilling rates.

OG802 Rev 10-01 Printed in U.S.A.                         Rate Schedule
©St. Paul Surplus Lines Insurance Company. 2001 All Rights Reserved                              Page 2 of 2

HOL 01672

The **St.Paul**

POLICY PERIOD:    08/19/2002    **To:**    08/19/2003

POLICY NUMBER:    MU05505777

EFFECTIVE DATE:    08/19/2002

INSURED:    Hollimon Oil Company

## CARE, CUSTODY, AND CONTROL ENDORSEMENT

1. In consideration of premium charged and subject to its Declarations, Common Conditions, and General Conditions, this Policy is endorsed to cover the Insured's legal or contractual liability as oil lease operator (or Co-Venturer where applicable) for physical loss or damage to, or expenses of salvage of, oil field equipment, including but not limited to drill pipe, drill collars, subs, drill bits, and core barrels, leased or rented by the Insured or in its care, custody, and control at the site and/or transportation to or from any Well Insured under Section IA of this Policy.

2. The Company's liability in respect of claims under this endorsement shall be limited to the Limit of Liability for Care, Custody, and Control set forth in Item 7. of the Declarations in respect of 100% interest, any one Occurrence. This limit shall be separate from and in addition to the Combined Single Limit of Liability that applies to all coverages provided under Section I.

3. The Company's limit of liability specified in Clause 2. of this endorsement shall be excess of the Insured's Retention for Care, Custody, and Control set forth in Item 8. of the Declarations in respect of 100% interest, any one Occurrence. This retention shall be separate from and in addition to the Insured's Retention(s) for Section IA, Section IB, and Section IC set forth in Item 8. of the Declarations.

4. In the event that in-hole salvage expenses or fishing costs are incurred in respect of equipment for which the Insured has assumed responsibility and which is lost or damaged as a result of a peril insured against in this endorsement, the maximum amount recoverable for such salvage expenses or fishing costs shall be 25% of the value of the lost or damaged equipment in the hole at the time of loss and which is the object of salvage or fishing efforts, always subject to the overall limit of liability specified in this endorsement.

5. Notwithstanding anything contained herein to the contrary, the Company shall not be liable for claims in respect of loss of or damage to:

    a. equipment owned by the Insured or in which the Insured has a financial interest;

    b. drilling or workover rigs or any component thereof, except in respect of an Occurrence arising out of an "unsound location."

    c. diamond bits and/or diamond bit core barrels;

    d. mud, chemicals, cement, the Well or casing installed therein;

    e. in-hole equipment whilst in the hole, unless the Insured's liability has resulted from physical loss or damage to such equipment as a result of (1) an Occurrence giving rise to a claim which would be recoverable under Section IA of this Policy if the Insured's Retention applicable to Section IA were nil, or

---

The **St.Paul**

(2) fire, windstorm, strikes, riots, civil commotion, vandalism, malicious mischief, flood, subsidence, explosion, collapse and/or pull-in of derrick or mast, or total loss of the drilling or workover rig.

6. This extension shall not cover or contribute to any loss, damage, or expense caused by or resulting from delay; loss of use; wear; tear; gradual deterioration; mysterious disappearance; inventory shortage; explosion, rupture or bursting of engines, pumps, piping, tanks, or any pressure container from internal pressure; electrical injury or disturbance to electrical appliances or wiring resulting from artificial or natural causes (unless fire ensues, and then from loss or damage by fire only); latent defect; faulty design; mechanical failure or breakdown of equipment leased or rented by the Insured or in the Insured's care, custody, and control.

7. The Company shall not be liable for loss of or damage to equipment beyond the actual sound value of such equipment at the time of loss, ascertained with proper deductions for depreciation, wear, tear, and obsolescence. As respects leased or rented equipment, the Company shall not be liable for any sum greater than that assumed by the Insured under the terms of the rental or lease agreement less any trade or volume discount allowed by the leasing or rental company, nor shall the Company's liability exceed what it would cost to repair or replace any equipment involved in any loss recoverable hereunder with other equipment of like kind and quality.

8. This endorsement shall not afford coverage with respect to any drilling operations performed for the Insured, or for the account of the Insured by another operator, upon which a written contract with the drilling contractor has not been executed in advance of commencing drilling operations, or within 48 hours thereafter, incorporating all the provisions and conditions to be effective as respects such drilling operations.

   Further, this endorsement shall not extend to any oral agreements prior or subsequent to or simultaneously with the execution of the written contract on such operations, and this endorsement shall not extend to any subsequent written agreement or rider to the original contract, other than to deepen any Well below the specified total depth of the original contract, affecting the assumption of liability by the Well owner for contractor's equipment.

All other terms and conditions remain unchanged.

---

**ST. PAUL 400 1998 CONTROL OF WELL AND
EXTRA EXPENSE WORDING**

**(THIS IS A MANUSCRIPT POLICY CONTAINING CERTAIN LIMITATIONS AND
EXCLUSIONS, IT SHOULD BE READ CAREFULLY BY THE INSURED)**

**SECTION I**

**COMMON CONDITIONS FOR SECTION IA, IB, IC AND ENDORSEMENTS**

1. **CO-VENTURERS:**

    Subject to the provisions of Clause 7 of these Common Conditions, this Policy may
    insure the interests of co-venturers (defined as co-owners, partners and/or other
    parties having a financial and insurable interest in the Wells Insured), all of whom
    individually and collectively are non-operators (all hereinafter referred to as
    "Co-Venturers"), and provided the agreement to include such Co-Venturers is
    executed in writing between and/or among the parties prior to any Occurrence
    giving rise to claim for reimbursement hereunder.

    Such Co-Venturers who comply with the above paragraph shall be deemed to be
    named as additional Insured hereunder but (a) only in respect of Wells Insured and
    only for the period of time operations in respect of said Well is insured hereunder as
    determined by Clause 9 of these Common Conditions and (b) excluding coverage to
    contractors unless such contractors have an ownership interest in a Well Insured and
    then only in respect of such ownership interest, and not as a contractor unless
    specifically agreed prior to Spudding-In and endorsed hereon.

    Any cover granted hereunder to Co-Venturers shall be limited to operations in which
    a Co-Venturer has a common interest with the Named Insured and shall be subject in
    all respects to the terms, conditions and rates and Combined Single Limit of
    Liability specified herein.

    If the Named Insured is not the operator of a Well Insured, then this insurance shall
    not cover the operator without the Company's prior approval.

*Common Conditions*
1

Ed. (1/98)

HOL 01675